IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| MICHAEL T. MUSGROVE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 3:14-CV-52 (CAR) |
| | : | |
| TOM VILSACK, Secretary, | : | |
| UNITED STATES DEPARTMENT | : | |
| OF AGRICULTURE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

This action arises from Defendant United States Department of Agriculture's termination of Plaintiff Michael T. Musgrove's employment in December 2012.  Plaintiff contends Defendant failed to accommodate his disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*  Plaintiff also challenges the Final Order of the United States Merit Systems Protection Board upholding his termination under the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7511 *et seq.* and 7701 *et seq.*  Currently before the Court is Defendant's Motion for Summary Judgment on both claims.  Having considered the parties' arguments, the record, and applicable law, the Court **GRANTS** Defendant's Motion [Doc. 14].

## BACKGROUND

For the purposes of this Motion, the material facts in the light most favorable to

Plaintiff, the nonmovant, are as follows:

*Plaintiff's Employment*

Since 1989, Plaintiff worked for the United States Department of Agriculture ("USDA") in various capacities.  In 2005, Plaintiff became a Research Food Technologist in the Egg Safety and Quality Research Unit ("ESQRU") in the Richard Russell Research Center, South Atlantic Area, Agricultural Research Service ("ARS") in Athens, Georgia. From 2005 to 2012, Plaintiff was employed at the ESQRU as a Category 1 Research Scientist where he was supervised by Dr. Richard Gast.  Dr. Gast is responsible for managing the ESQRU research scientists, as well as conducting and publishing research himself.[1]

As a research scientist, Plaintiff was responsible for carrying out and reporting the results of scientific research.  Each year, every research scientist was required to meet with Dr. Gast to have their yearly performance plan approved.[2]  The performance plan includes "critical element" requirements that must be satisfied to receive a fully successful performance rating, the lowest acceptable rating for continued employment in the ESQRU.  Critical Element II (CE II) of Plaintiff's performance plan required him to author and submit two manuscripts of original research to journals (or other publications) with documentation of submission being shown in the Agricultural

---

[1] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 1-2, 15.

[2] *Id.* at pg 2.

2

Research Information System ("ARIS").[3]   The CE II requirement is "central to the performance" of the ESQRU because it assures the unit is performing quality research by making it available to the public.[4]   Since 2005, the beginning of Plaintiff's employment at the ESQRU, he has been required to author two manuscripts for his CE II requirement each year, which he satisfied until the fiscal year ending September 30, 2011.[5]

***Plaintiff's Disability and Request for Accommodation***

In January 2009, Plaintiff was diagnosed with having obstructive sleep apnea syndrome, and on July 27, 2009, Plaintiff submitted a written request to Dr. Gast asking for reasonable accommodations for his disability.[6]   On August 12, 2009, a USDA Medical Officer reviewed the request and determined Plaintiff was an employee with a disability under the ADA and eligible for reasonable accommodations.   Thereafter, Dr. Gast fully accommodated Plaintiff's request by removing the leave restriction he was currently on, permitting him to have a maxi-flex work schedule, and allowing him to take FMLA leave for his disability.[7]

---

[3] Def.'s Stmt. of Material Facts, [Doc. 14-1] at pg 3.

[4] *Id.* at pg 3-4.

[5] *Id.*

[6] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 3-4.

[7] Def.'s Stmt. of Material Facts, [Doc. 14-1] at pg 4-5. In September 2011, Plaintiff asked that a member of his support staff be carbon copied on to all his emails because his ADHD caused him to miss emails. Dr. Gast did not believe it was the support staffs job to monitor Plaintiff's emails and denied the request. However, Dr. Gast then told Plaintiff he "respect[ed] [his] right to seek support through the Agency's mechanism for accommodating disabilities." Plaintiff never followed up with this request and did not notify Defendant of any additional disabilities he was suffering from. Dr. Gast Depo., [Doc. 21-14] Ex. 13 at pg 1.

*Plaintiff's Performance Issues and Termination*

The following year, Plaintiff began having performance problems at work. Plaintiff failed to respond to work e-mails and messages and missed several deadlines, including his annual report of research progress and documentation of completed personal research.  Based on these issues, Dr. Gast expressed concern over Plaintiff's research objectives in his mid-year review for 2009-2010.[8]  Although Plaintiff assured Dr. Gast he would finish his work, he did not complete all the assigned objectives for the 2009-2010 fiscal year.[9]  Despite this failure, Plaintiff received a fully successful performance rating for 2009-2010.[10]

In the 2010-2011 fiscal year, Plaintiff failed to complete his CE II requirement by the September 30, 2011 deadline.  To address this issue, Plaintiff was placed on a performance improvement plan ("PIP"), which provided him with an additional 90 days to complete the required two manuscripts and receive a fully satisfactory performance rating for 2010-2011.  On December 5, 2011, Dr. Gast gave Plaintiff a PIP letter outlining his performance requirements and notifying him that if he failed to complete the manuscripts by the end of the 90 days he would be subject to removal.  The letter also specifically informed Plaintiff "if [he had] a medical condition not identified under the reasonable accommodation process that [he felt] may contribute to [his] unacceptable

---

[8] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 4-5.

[9] *Id.* at pg 5.

[10] *Id.* Defendant discussed placing Plaintiff on PIP based on his 2009-2010 performance, but ultimately decided against it. Dr. Gast Depo., [Doc. 21] at pg 37-38.

performance, [he] may submit medical documentation."[11]  Plaintiff did not identify any

such conditions or request any new accommodations.  After Plaintiff turned in his two

manuscripts and completed the PIP in March 2012, Dr. Gast gave him a fully satisfactory

performance rating for the 2010-2011 fiscal year.  However, Dr. Gast reminded Plaintiff

that if he failed to sustain a fully successful level of performance in CE II for "at least one

year from the date of the PIP, [Plaintiff would] be subject to removal without being given

another opportunity to improve."[12]

Though Plaintiff completed the PIP, the Area Director, Dr. Deborah Brennan,

expressed concern to Dr. Gast about the quality of Plaintiff's manuscripts.  Normally, Dr.

Brennan did not review each research scientist's published work; however, once an

employee is placed on PIP it is her policy to review the employee's work during the PIP

period.  To ensure that the quality of Plaintiff's work improved after the PIP period, Dr.

Brennan requested to review his next two manuscripts as well.  Dr. Gast also required

that Plaintiff obtain two additional peer reviews for his next manuscripts based on these

concerns.[13]  Plaintiff's 2011-2012 CE II requirement was due September 30, 2012, seven (7)

months after he completed the PIP, but his manuscripts and reviews were due to Dr.

Gast by the end of August.[14]

---

[11] PIP Letter, [Doc. 14-6].
[12] March 2012 PIP Completion Letter, [Doc. 14-7].
[13] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 9-11.
[14] Def.'s Stmt. of Material Facts, [Doc. 14-1] at pg 7-8.

Throughout 2012, Dr. Gast continued to communicate with Plaintiff regarding the approaching deadline for his manuscripts.  On April 30, 2012, Dr. Gast held a mid-year performance review with Plaintiff to inquire about the status of his research and progress on the required manuscripts, and Plaintiff did not express any concerns about completing his work.[15]  However, during this time period, specifically March and April of 2012, Plaintiff was absent from work for a lengthy period of time due to illness. Plaintiff failed to respond to several e-mails, missed meetings, and was charged with more than 100 hours of "Absence Without Leave" ("AWOL").[16]  Plaintiff also failed to submit the appropriate FMLA documentation during these absences.[17]  After Dr. Gast's requests, Plaintiff filed the FMLA certificate forms to account for his absences.  One of the FMLA reports stated Plaintiff had "Bipolar Disorder Symptoms" and "Attention Deficit Symptoms," while another stated Plaintiff suffered from sleep apnea and depression.[18] Dr. Gast reviewed Plaintiff's FMLA forms and then forwarded the forms to human resources.[19]  Plaintiff believed this should have fixed the amount of AWOL hours he was currently charged with.[20]

In May 2012, Plaintiff e-mailed Dr. Gast requesting time off for a vacation.  Dr. Gast allowed Plaintiff to take time off, but wrote:

---

[15] *Id.* at pg 7.
[16] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 11-12.
[17] Dr. Gast's Depo., [Doc. 21] at pg 72-77.
[18] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 12-13.
[19] *Id.*; Dr. Gast's Depo., [Doc. 21] at pg 80-82.
[20] *See* Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 12-13; Dr. Gast Depo., [Doc. 21-31] Ex. 30 at pg 1-2.

> My only concern would be for any potential effect on an absence from work on your ability to finish your required manuscripts for this year in time to allow the necessary peer, Unit and Area reviews before submission. I don't know what Dr. Brennan's exact deadline will be but I think at this point that it would be prudent to plan to have the papers ready to submit to her no later than August 15 … I just want to make sure that you are cognizant of these deadlines before planning to use leave.[21]

On May 27, 2012, Plaintiff assured Dr. Gast:

> I am in good shape for meeting my required manuscripts for the year. I anticipate no concern over completing the writing or necessary lab work before the end of my rating period …. I am cognizant of all my deadlines and of the importance on satisfying or exceeding every performance element.[22]

Again, at a staff meeting on June 29, 2012, Dr. Gast reminded all research scientists, including Plaintiff, of the approaching deadlines.[23]

In the beginning of July, Plaintiff still had large amounts of AWOL hours charged against him, even though the appropriate FMLA paperwork was submitted to Dr. Gast and human resources.[24]  Based on this issue, Plaintiff sent Dr. Gast a memo explaining his frustration and concerns about his FMLA eligibility and AWOL hours.  Plaintiff felt his AWOL hours were still incorrect and that his requests to correct the hours were being ignored.   Plaintiff specifically reminded Dr. Gast that he was provided reasonable accommodations for his disability, which included taking FMLA leave as needed. Plaintiff ended the letter by stating the "USDA Medical Officer has agreed with my local

---

[21] Def.'s Stmt. of Material Facts, [Doc. 14-1] at pg 7.

[22] *Id.*

[23] Defs. Stmt. of Material Facts, [Doc. 14-1] at pg 8.

[24] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 13-14; Dr. Gast Depo., [Doc. 21-31] Ex. 30 at pg 1-2.

physicians and doctors in classifying me as a disabled employee and I am asking to be treated as such."[25]

Throughout this time, Dr. Gast notified human resources of all communications with Plaintiff and sought advice on how to best handle the situation.[26]  On July 30, 2012, Dr. Gast sent Plaintiff an e-mail following up on a discussion they had regarding Plaintiff's 2011-2012 CE II requirement.  Dr. Gast stated "[i]n order to meet the needs of review and ARIS entry, I will need to receive all manuscripts (plus two reviews for each paper) by August 31st …. I hope your manuscript process is going well. Please let me know if you have any questions."[27]  Three days later, on August 2, 2012, Dr. Gast sent an email to all research scientists reminding them of their upcoming deadlines.[28]  At no point did Plaintiff inform Dr. Gast he would be unable to meet the deadlines for either manuscript.[29]

On September 30, 2012, at about 9:45 p.m., Plaintiff sent Dr. Gast an email requesting that he review the attached manuscript.  The manuscript only had one peer review (instead of the required two), was never submitted to Dr. Brennan, and was submitted a month after the August deadlines.  Assuming no additional edits were needed, this left only a few short hours for Dr. Gast to review the manuscript, and for

---

[25] Dr. Gast Depo., [Doc. 21-31] Ex. 30 at pg 1-2.
[26] Dr. Gast Depo., [Doc. 21] at pg 88-89.
[27] Def.'s Stmt. of Material Facts, [Doc. 14-1] at pg 7-8.
[28] *Id.*
[29] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 15.

Plaintiff to enter the information into the ARIS tracking system and submit a final version of the manuscript to a journal.[30]  Plaintiff's email did not address why the manuscript was late, and he never submitted a second manuscript.[31]

Following Plaintiff's failure to complete his CE II requirement for the second consecutive year, Dr. Gast notified human resources that Plaintiff did not complete his performance plan for the 2011-2012 period.  Human resources decided to terminate Plaintiff's employment.  On October 19, 2012, Dr. Gast issued a formal proposal to remove Plaintiff based on his failure to complete his CE II requirement one year after finishing the PIP.[32]  The final decision to remove Plaintiff was made by Dr. Paul Sebesta, the Acting Associate Area Director.[33]

### United States Merits Systems Protection Board Decisions

On December 21, 2012, Plaintiff filed an appeal to the United States Merit Systems Protection Board ("MSPB"), challenging the agency's decision to remove him from his position as an ESQRU research scientist.  The administrative judge determined Plaintiff "facially satisfied" his CE II requirement by submitting two manuscripts between

---

[30] Def.'s Mtn. for Summary Judgment, [Doc. 14-14] at pg 6.
[31] Pl.'s Stmt. of Add. Material Facts, [Doc. 22-3] at pg 15.
[32] Dr. Gast Depo., [Doc 21-36] Ex. 35 at pg 1-2 (ARS Performance Appraisal System Number 418.3 allows for termination of an employee who, after completion of a PIP, reverts back to unacceptable performance of any of the elements included in the PIP at any time up to one year from the date the PIP began.).
[33] Def.'s Stmt. of Material Facts, [Doc. 14-1] at pg 10.

October 1, 2011, and September 30, 2012, and reversed Plaintiff's removal.[34]  Plaintiff was issued a return to duty letter on December 2, 2013, and began working in a different department.[35]

Defendant then petitioned for review of the MSPB's initial decision to reinstate Plaintiff's employment.  Ultimately, Defendant's petition was granted and the decision to reinstate Plaintiff was reversed.   On May 6, 2014, the MSPB upheld Plaintiff's termination, finding the manuscripts he completed were for the 2010-2011 fiscal year only and to permit otherwise would mean Plaintiff "could have done nothing under CE [] II during the remaining seven months of 2012 and still achieved [a fully successful rating]."[36]   Additionally, the MSPB found that allowing the manuscripts to "facially satisfy" the 2011-2012 requirement would undermine Congress's purpose for PIP.[37]  Plaintiff now requests judicial review of the MSPB's decision and brings a failure to accommodate claim against Defendant.

## DISCUSSION

Plaintiff may seek judicial review of the Merit System Protection Board's decision pursuant to 5 U.S.C. § 7703.[38]   When, as here, Plaintiff brings both a discriminatory and

---

[34] Pl.'s Complaint, Ex. A [Doc. 1-1] at pg 1, 5.  The administrative judge also held Plaintiff failed to prove his discrimination claim. *Id.* at 14.

[35] Def.'s Stmt. of Material Facts, [Doc. 14-1] at pg 10.

[36] Pl.'s Complaint, Ex. B [Doc. 1-2] at pg 1, 5-6. The MSPB also upheld the initial determination that Plaintiff failed to prove his discrimination claim. *Id.*

[37] *Id.* at 5-6.

[38] *See Kelliher v. Veneman*, 313 F.3d 1270, 1274 (11th Cir. 2002), *reh'g denied*, 57 F. App'x 416 (11th Cir. 2003).

non-discriminatory claim, it is known as a "mixed" case, and the district court has jurisdiction to review both claims.[39]  However, only discrimination claims are subject to *de novo* review.[40]  The Court will first address Plaintiff's failure to accommodate claim under the Rehabilitation Act, applying the standards set forth under Federal Rule of Civil Procedure 56(c) and the applicable substantive law.  Next, the Court will review the MSPB's decision only to "ensure that the determination was (1) not arbitrary or capricious, (2) made without regard to law, or (3) not based on substantial evidence."[41]

I.   REHABILITATION ACT CLAIM

Plaintiff contends Defendant failed to accommodate his disabilities and discriminated against him in violation of Section 504 of the Rehabilitation Act ("Rehab Act").  Defendant argues Plaintiff did not request any accommodations and was terminated after two consecutive years of failing to complete his performance plan requirements.

A.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[42]  Not all factual disputes render summary

---

[39] *Id.*

[40] *Id.* at 1274-75.

[41] *Kelliher*, 313 F.3d at 1276.

[42] Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.[43]  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[44]

On summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[45]  The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[46]  If the moving party discharges this burden, the burden then shifts to the nonmoving party to respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence creates a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law.[47]  This evidence must consist of

---

[43] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[44] *See id.* at 249-52.

[45] *See id.* at 254-55; *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[46] *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

[47] *See* Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 324-26.

more than mere conclusory allegations or legal conclusions.[48]

## B. ANALYSIS

Plaintiff alleges Defendant violated the Rehab Act by failing to preemptively offer deadline extensions or a reduction in work requirements, imposing more strenuous performance standards on him, and eventually terminating him.  Defendant contends it provided Plaintiff with the reasonable accommodations he requested for his sleep apnea; however, Plaintiff failed to notify Defendant of any additional accommodations needed for his CE II requirement.

The Rehab Act prohibits federal agencies from discriminating against employees with disabilities and is governed by the same standards as the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*  ("ADA"). [49] "[T]hus, cases involving the ADA are precedent for those involving the Rehabilitation Act."[50]   To establish a prima facie case for disability discrimination, a plaintiff must specifically demonstrate that (1) he has a disability; (2) he was a "qualified individual" for the position; and (3) he was subject to unlawful discrimination as a result of his disability.[51]   It is well settled that "an employer's failure to reasonably accommodate a disabled individual itself constitutes discrimination under the [Rehab Act], so long as that individual is 'otherwise qualified,'

---

[48] *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991).

[49] *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam); *see also* 29 U.S.C. § 794(a); 42 U.S.C. § 1981(a)(2).

[50] *Ellis*, 432 F.3d at 1326 (citing *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)).

[51] *Sutton v. Lader*, 185 F.3d 1203, 1207-08 (11th Cir. 1999).

and unless the employer can show undue hardship."[52]   A reasonable accommodation is one that would allow the employee to perform the essential functions of the job.[53] However, "a plaintiff cannot establish a claim under the Rehabilitation Act alleging that the defendant discriminated against him by failing to provide a reasonable accommodation unless he demanded such an accommodation."[54] Though the Eleventh Circuit has not yet "determined precisely what forms the request [for reasonable accommodation] must take,"[55] it still holds that "failure to make that specific demand is fatal to [a plaintiff's] claim.[56]

Here, Plaintiff admits he never demanded any accommodations to help him complete the two manuscripts or even notified Defendant that he would not be able to complete his work in accordance with the set deadlines.[57]  Instead, Plaintiff suggests the

---

[52] *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (emphasis omitted); *see also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

[53] *Lucas*, 257 F.3d at 1255.

[54] *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1364 (11th Cir. 1999) (citing *Wood v. President and Trustees of Spring Hill College in the City of Mobile*, 978 F.2d 1214, 1222 (11th Cir. 1992)).

[55] *Holly*, 492 F.3d at 1261 n.14.

[56] *Roddy v. City of Villa Rica, Ga.*, 536 F. App'x 995, 1000-1001 (11th Cir. 2013) (per curiam) ("We need not address Roddy's claim that the City failed to provide him a reasonable accommodation by transferring him to an investigator position because Roddy did not establish that he made a specific demand for that accommodation, and the failure to make that specific demand is fatal to his claim."); *see also Cazeau v. Wells Fargo Bank, NA*, 614 F. App'x 972, 982 (11th Cir. 2015) (finding no genuine issue for trial where Plaintiff never requested a specific accommodation); *McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897, 899 (11th Cir. 2014) (per curiam) ("[Plaintiff] did not establish any facts to show that he made a specific demand for an accommodation before his supervisors decided to fire him.").

[57] Additionally, Plaintiff did not formally notify Defendant of any additional disabilities after his 2009 sleep-apnea request.  Defendant had no reason to know Plaintiff was unable to make such a request as Plaintiff had already requested and received accommodations for his sleep apnea.  Plaintiff clearly understood how to make a request for his disabilities and what the proper channels were to receive reasonable accommodations.  Defendant is not responsible for Plaintiff's failure to properly notify his employer of any

14

EEOC guidelines[58] create a duty for Defendant to preemptively investigate and offer a reasonable accommodation without any request from Plaintiff.  However, "the [Rehab Act] provides no cause of action for 'failure to investigate' possible accommodations."[59] The Eleventh Circuit has continuously held the employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."[60]  Plaintiff is responsible for initiating this process, which he failed to do here.

Plaintiff points to *Salser v. Clarke County School District*, arguing Plaintiff had no duty to make a specific request for a reasonable accommodation because he so obviously required one.[61]  In *Salser*, the court noted that "for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [employer] to make

---

additional disabilities he was suffering from at the time. *See Williamson v. Clarke Cnty. Dept. of Human Resources*, 834 F.Supp.2d 1310, 1321 n.16 (S.D. Ala. 2011) ("Alternatively, Plaintiff's failure to abide by [the employer's] standard procedure for requesting accommodations may, in and of itself, bar his claim." (citing *Edwards v. U.S. E.P.A.*, 456 F.Supp.2d 72, 103 (D.D.C. 2006) ("[A]n employee's oral request cannot trump an employer's established procedure for requesting and approving disability accommodations."))).

[58] *See* ENFORCEMENT GUIDANCE: REASONABLE ACCOMMODATION AND UNDUE HARDSHIP, EEOC Notice No. 915.002 (Oct. 17, 2002).

[59] *Willis v. Conopco, Inc.*, 108 F.3d 282, 185 (11th Cir. 1997).

[60] *Gaston*, 167 F.3d at 1363; *see also Spears v. Creel*, 607 F. App'x 943 (11th Cir. 2015) (per curiam) (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000)); *McCarroll*, 595 F. App'x at 899-900; *Warren v. Volusia Cnty., Fla.*, 188 F. App'x 859, 862-63 (11th Cir. 2006) (per curiam) ("An employee's failure to request a reasonable accommodation is fatal to the prima facie case."); *but see Holly*, 492 F.3d at 1261 n.14 ("We have not determined whether a plaintiff must ask for an accommodation prior to litigation.").

[61] 802 F.Supp.2d 1339 (M.D. Ga. 2011).

appropriate inquiries about the possible need for an accommodation."[62]   However, the court found the plaintiff's "vague complaints" were not the type of specific demand required to trigger an employer's duty and "there [was] no indication [the job assignment] so obviously required accommodation that there was no need for [the plaintiff] to make a request."[63]   The same is true here.   Plaintiff never complained about the CE II requirements or even hinted at a need for an extension or other accommodation.[64]   Instead, Plaintiff continuously affirmed he would complete the manuscripts on time and then failed to meet the deadlines.   The Court cannot find an employer is required to provide reasonable accommodations when an employee continues to indicate there is no problem.[65]

Moreover, Dr. Gast inquired several times in to Plaintiff's manuscripts deadline. In March 2012, after Plaintiff completed the PIP and his 2010-2011 CE II requirement, Dr. Gast reminded Plaintiff that he still had two manuscripts to complete by August. Plaintiff acknowledged both the deadlines and the need for additional peer and Area

---

[62] *Id.* at 1356 (quoting *United States v. Hialeah Hous. Auth.*, 418 F.App'x 872, 876 (11th Cir. 2011) (per curiam) (internal quotation marks and citations omitted) (discussing requirements for ADA reasonable accommodation demand in Fair Housing Act case)).

[63] *Id.* The court relied on *Hialeah Housing Authority* for this proposition.   In *Hialeah Housing Authority*, the plaintiff made several complaints to the Housing Authority about a specific need for a downstairs bathroom in his apartment; thus, putting the defendant on notice. 418 F. App'x at 876-77.

[64] In his memo to Dr. Gast, Plaintiff did complain about his FMLA leave and AWOL hours issues.   However, this had nothing to do with his manuscripts and would not have helped Plaintiff complete his CE II requirements by September 30, 2012.

[65] *See* Enforcement Guidance: Reasonable Accommodation and Undue Hardship, EEOC Notice No. 915.002 (Oct. 17, 2002) ("If an individual with a disability states that s/he does not need a reasonable accommodation, the employer will have fulfilled its obligation.").

Director reviews.  Plaintiff continued to tell Dr. Gast he was on track to complete his CE II requirement.  Indeed, in May 2012, after Dr. Gast expressed concern over Plaintiff requesting time off for a vacation, Plaintiff said he was in "good shape" and was planning on submitting a draft to Dr. Gast before he left for his vacation.[66]  Dr. Gast checked in with Plaintiff several times after this, reminding him of his deadlines, yet Plaintiff never once mentioned any delays or need for extensions.  It was not until after Plaintiff's termination that he finally claimed his failure to complete the CE II requirement on time was due to his disabilities and suggested some reasonable accommodations.

The Court finds no reasonable jury could conclude that Plaintiff requested any reasonable accommodation for his disabilities regarding his Critical Element II requirements.  Therefore, the Court finds Defendant cannot be liable for failure to provide a reasonable accommodation under the Rehab Act, and Defendant is entitled to summary judgment on this claim.

## II.    PETITION FOR JUDICIAL REVIEW

The Court now turns to Plaintiff's request for judicial review of the MSPB's decision to uphold Plaintiff's termination.  Plaintiff contends the Court should overturn the MSPB's decision because he turned in two manuscripts during the 2011-2012 fiscal year as required, and thus should not have been terminated.  Defendant argues the

---

[66] Dr. Gast Depo., Ex. 29, [Doc. 21-30] at pg 2.

termination should be upheld because the MSPB's decision is not arbitrary, capricious, or unsupported by substantial evidence.

### A. LEGAL STANDARD

This claim is subject to review on the record and may only be set aside if the Court finds that the agency action, finding, or conclusion is found to be "(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."[67]   The Court must give deference to the MSPB's decision regarding non-discriminatory claims.[68]

### B. ANALYSIS

Plaintiff argues the MSPB's decision to uphold his termination is both arbitrary and capricious and unsupported by substantial evidence because he technically completed his CE II requirement for the 2011-2012 fiscal year and should not have been terminated.   The CE II requirement states Plaintiff must submit at least two original manuscripts for publication between October 1, 2011, and September 30, 2012.  Plaintiff claims the two manuscripts he completed for the 2010-2011 period should satisfy the 2011-2012 CE II requirement because they were turned in on March 4, 2012.  Plaintiff acknowledges the manuscripts were submitted in March because he missed the original

---

[67] *Keel v. U.S. Dept. of Air Force*, 256 F.Supp.2d 1269, 1272 (M.D. Ala. 2003) (citing *Kelliher*, 313 F.3d at 1274-75; 5 U.S.C. § 7703(c)).
[68] *Kelliher*, 313 F.3d at 1275.

deadlines and was placed on a PIP.  However, Plaintiff argues because there is tension between the PIP process and the performance plan requirements, "the Court should enforce the performance standards as written and construe all ambiguity against the Agency."[69]  The Court disagrees.  After reviewing the record and MSPB's two decisions, the Court finds the MSPB's final decision to uphold Plaintiff's termination must be affirmed.

First, "[i]n determining whether the outcome in an adjudication before an administrative agency such as the MSPB is arbitrary and capricious [a reviewing court does] not substitute [its] judgment for that of the agency but rather only seek[s] to ensure that the decision was reasonable and rational."[70]  "Along the standard of review continuum, the arbitrary and capricious standard gives [a reviewing court] the least latitude in finding grounds for reversal.  We must only consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment."[71]  Here, in deciding to remove Plaintiff, the MSPB considered the relevant factors and relied on several previous decisions with similar facts.  The MSPB made no clear error in judgment and its final decision was reasonable and rational.  The Court finds there is no evidence that the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

[69] Pl.'s Response Brief, [Doc. 22-1] at pg 13.
[70] *Kelliher*, 313 F.3d at 1276 (citing *Zukas v. Hinson*, 124 F.3d 1407, 1409 (11th Cir.1997)).
[71] *Id.* (quoting *North Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir.1990) (citations and internal quotations omitted)).

Second, there is no basis for finding the decision to uphold Plaintiff's termination was obtained without procedures required by law, rule, or regulations having been followed.  Plaintiff challenged his termination and received a full and fair hearing under the applicable MSPB procedures.   Plaintiff was reinstated in a different department.  However, Defendant appealed this decision, and the MSPB reversed the reinstatement order and upheld Plaintiff's termination.  At each step the proper procedures and rules were followed by the MSPB, and the Court concludes there is no basis for disturbing the decision of the MSPB based on this matter.

Finally, "[w]hen reviewing administrative decisions to determine if they are supported by substantial evidence [the reviewing court] examines the entire record but defers to the agency's factual determinations as long as there is relevant evidence that supports the findings as reasonable. This deferential standard of review means that as long as the conclusion is reasonable, we defer to the agency's findings of fact even if we could have justifiably found differently. We do not re-weigh or re-examine the credibility choices made by the fact-finder."[72]   Here, there was relevant evidence before the Board to support its determination.  Accordingly, the Court must affirm the decision of the MSPB.

---

[72] *Id.* at 1277 (internal citations omitted) (citing *Fort Valley State Coll. v. Bennett*, 853 F.2d 862, 863, 864, 866 (11th Cir.1988); *City of Pompano Beach v. FAA*, 774 F.2d 1529, 1539–40 (11th Cir.1985)).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 14] is

**GRANTED**.

     **SO ORDERED**, this 25th day of March, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT
